IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL WIDMER, # B-30985,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 14-cv-88-MJR |
| | ) |
| **BRAD BRAMLET,** | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a five-year sentence for intimidation, and four-year sentences for obstructing justice and fleeing a police officer. He claims that Defendant Bramlet, an assistant paralegal at Menard, has prohibited his access to the courts. He seeks injunctive relief.

**Pending Motion to Supplement (Doc. 4)**

Shortly after Plaintiff filed his complaint on January 27, 2014, he filed a motion to supplement (Doc. 4, filed on February 3, 2014). In this motion, he stated he planned to file an amended complaint within ten days, to add another Defendant to the action. However, Plaintiff has not tendered an amended complaint to date. Therefore, the motion to supplement (Doc. 4) is **DENIED**, and the Court shall proceed to evaluate the original complaint.

**The Complaint**

Plaintiff alleges that between June 2013 and January 2014, Defendant Bramlet intentionally refused to provide him with legal supplies and materials, including photocopies of

legal documents (Doc. 1, p. 5). During this time, Plaintiff informed Defendant Bramlet several times that he had court deadlines in pending cases, and would be unable to comply with court rules if his requested legal photocopies were denied. Nonetheless, Defendant Bramlet "picked and chose" the documents Plaintiff was allowed to have copied. *Id*. Plaintiff contends that Defendant Bramlet knew that his actions "could possibly cause [Plaintiff] to be unable to comply with court orders and . . . lose [his] case(s)." *Id*. He encloses one note received from Defendant Bramlet on January 23, 2014 (Doc. 1, p. 10), in which Defendant Bramlet directed him to submit a motion and information on where the copies should be sent, in order to have copies made. Plaintiff says that Defendant Bramlet refused to make those photocopies for him, but does not identify which of his pending cases might have been affected by this dispute (Doc. 1, p. 6).

Plaintiff includes a list of 17 cases which he had pending in the Illinois federal district courts at the time he brought this action (Doc. 1, p. 9). Counsel had been appointed for Plaintiff in eight of those pending suits.

Plaintiff asserts that because Defendant Bramlet refused to provide him with copies of various documents, including newspaper articles, letters, affidavits, blank forms, and unanswered grievances, he was unable to file legal pleadings in compliance with court rules in several (unidentified) cases (Doc. 1, p. 6). He also states that he has been unable "to file intelligent pleadings in compliance with court rules" because of Defendant Bramlet's actions (Doc. 1, p. 7).

In addition, between October 2013 and January 2014, Defendant Bramlet refused to provide Plaintiff with legal envelopes to send mail to the Illinois Governor, Federal Bureau of Investigation, members of Congress, or Illinois State Senators and Representatives. *Id*. Plaintiff contends that as an indigent prisoner, he is entitled to be given envelopes to send privileged mail

to these recipients.

Plaintiff asserts that Defendant Bramlet's actions hindering his access to the courts are ongoing, and he seeks declaratory and injunctive relief to stop the misconduct (Doc. 1, pp. 7-8).  He does not request damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

For the convenience of the Court, Plaintiff's claims shall be designated as follows:

    **Count 1:**  Claim for denial of access to the courts, for Defendant Bramlet's refusal to supply Plaintiff with copies of documents;

    **Count 2:**  Mail interference claim for Defendant Bramlet's refusal to provide Plaintiff with "legal envelopes" to send mail to various public officials not connected with the courts.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that Plaintiff fails to state a claim upon which relief may be granted on either of the above counts.  Therefore, this action is subject to summary dismissal.

**Dismissal of Count 1 – Access to Courts**

This is not the first time that Plaintiff has sued Defendant Bramlet claiming that he has denied Plaintiff access to the courts.  In *Widmer v. Page, et al.*, Case No. 13-cv-663-MJR-SCW (S.D. Ill., filed July 11, 2013), Plaintiff claimed in Count 6 that on June 23-25, 2013,

Defendant Bramlett[1] failed to copy his legal documents or case law, and would not provide him with legal supplies. Further, Defendant Bramlett delayed filing Plaintiff's legal documents for nine days after Plaintiff submitted them on July 2, 2013 (Doc. 19, pp. 8-9, and Doc. 20, pp. 3-4, in Case No. 13-cv-663). The allegations of Defendant's misconduct in this new action cover the entire period from June 2013 to January 2014, and thus incorporate the June and July 2013 incidents that gave rise to Plaintiff's claim in Count 6 in Case No. 13-cv-663. That claim (Count 6 in Case No. 13-cv-663) was dismissed with prejudice by the undersigned Judge on August 1, 2013, for failure to state a claim upon which relief may be granted. That conclusion was explained as follows:

> [T]he complaint does not indicate that these actions [Defendant Bramlet's delay in filing documents and denial of legal copies and supplies] caused Plaintiff to suffer any actual or potential detriment to his ability to pursue a meritorious claim in court. Actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts. *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021-22 (7th Cir. 1987). An inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). A delay in filing such as Plaintiff describes is not, in and of itself, a detriment of constitutional proportions. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Therefore, Plaintiff's access to court claim shall be dismissed with prejudice.

(Doc. 20, p. 7, in *Widmer v. Page, et al.*, Case No. 13-cv-663).

Because the incidents raised in Plaintiff's earlier case failed to state a claim and were dismissed with prejudice, it is improper for Plaintiff to attempt to revive those claims in a new action. To the extent that Count 1 herein includes the June and July 2013 incidents that formed the basis of Count 6 in Case No. 13-cv-663, that portion of Plaintiff's claim is frivolous and barred by the doctrine of res judicata (claim preclusion). *See Gleash v. Yuswak*, 308 F.3d

---

[1] Plaintiff spelled this Defendant's surname as "Bramlett" in his initial pleading in the earlier case, but later identified him as Brad Bramlet, Legal Coordinator, in that action. The claims in the earlier case clearly involve the same Defendant Brad "Bramlet" named herein.

758, 760 (7th Cir. 2002) (the final resolution of one suit is conclusive in a successor claim and will bar a subsequent suit); *Keller v. Monroe Cnty. Sheriff's Dept.*, 473 F. App'x 510, 511 (7th Cir. 2012) (res judicata bars a suit if there was a judgment on the merits and the parties and claims are identical). Although res judicata is an affirmative defense, the Court may raise it sua sponte when the complaint and other court documents make it clear that the claim is frivolous. *Gleash*, 308 F.3d at 760 (citing *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002)).

Plaintiff does, however, include allegations regarding Defendant Bramlet that go beyond those raised in Case No. 13-cv-663. While these portions of Count 1 are not barred by res judicata, Plaintiff still fails to state a cognizable claim for denial of his access to the courts.

To begin with, Plaintiff never claims that he actually suffered any detriment to his ability to pursue a single one of the 17 separate lawsuits he had pending at the time the instant action was filed. Instead, he speculates that Defendant Bramlet's denial of copies "could possibly" cause him to lose a case or be unable to comply with court orders (Doc. 1, p. 5). He adds that Defendant's refusal to copy various documents rendered Plaintiff unable to file pleadings in compliance with court rules (Doc. 1, pp. 6-7). However, he never identifies which, if any, cases were affected, nor does he describe any adverse consequences he suffered as a result of the allegedly deficient pleadings.

As Plaintiff was informed when Count 6 was dismissed from his earlier case against Defendant Bramlet, in order to state a constitutional claim for denial of access to the courts, a prisoner must have suffered an actual or threatened detriment to his ability to pursue a meritorious legal claim. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996); *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021-22 (7th Cir. 1987). "[T]he mere denial of access to a prison law library or to other legal materials is not itself

a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Thus, Defendant Bramlet's refusal to provide Plaintiff with copies of all the various documents he requested did not violate the Constitution, unless Plaintiff demonstrates that Defendant Bramlet's actions caused actual prejudice to a specific case. A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Id.* The instant complaint falls far short of this mark. Furthermore, a review of Plaintiff's pending litigation shows that even if he were allowed to amend his complaint to provide more specific facts, he would be unable to show any prejudice to any of his lawsuits traceable to Defendant Bramlet.

A review of this Court's docket, as well as the records available from the Northern District and Central District of Illinois on the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov),[2] shows that only two of Plaintiff's cases have been dismissed since June 2013, when he claims Defendant Bramlet's interference began. Both of those dismissals came after Plaintiff filed the instant case, and neither has any apparent connection to Defendant Bramlet's conduct.

The first case, *Widmer v. Martin*, Case No. 12-cv-1261-MJR-SCW (S.D. Ill., filed Dec. 12, 2012), was dismissed by the undersigned Judge on January 15, 2014, because Plaintiff failed to exhaust his administrative remedies (Doc. 51 in Case No. 12-cv-1261). Plaintiff was

---

[2] Court documents are public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

represented by recruited counsel during the Court's consideration of the defense motion for summary judgment for failure to exhaust. Plaintiff's claim in that case arose from his incarceration at Lawrence Correctional Center, not Menard, where Defendant Bramlet is employed. These circumstances indicate that the dismissal of Case No. 12-cv-1261 can in no way be attributed to Defendant Bramlet's actions complained of herein.

Plaintiff represented himself in the other dismissed case, *Widmer v. Lawless*, Case No. 13-cv-1245-MJR-SCW (S.D. Ill., severed on Dec. 3, 2013, from Case No. 13-cv-787, which itself had been severed on August 2, 2013, from Case No. 13-cv-663 (filed July 11, 2013)). *Widmer v. Lawless* was dismissed on March 3, 2014, because the identical claim Plaintiff raised had been dismissed with prejudice in an earlier case, *Widmer v. Kempfer, et al.*, Case No. 13-cv-1131-MJR-DGW (Doc. 11 in Case No. 13-cv-1245). Plaintiff admitted in his response to the Court's show cause order that he brought the same claim after it had been dismissed, in an attempt to provide more detail and correct his earlier mistakes (Doc. 10 in Case No. 13-cv-1245). Again, a review of the record shows that the dismissal of *Widmer v. Lawless* had nothing to do with Defendant Bramlet's denial of copies or legal materials.

Where the record shows that an inmate has filed motions and pleadings with the court, and does not show any hindrance to his ability to pursue a meritorious claim, he cannot maintain a claim for denial of access to the courts. See *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010) (finding no deprivation of court access when defendant filed three motions to dismiss). In Plaintiff's case, during the time he complains that Defendant Bramlet was refusing him copies and other materials, he was able to maintain a total of 17 lawsuits (14 of them in this District Court). Seven cases[3] in all were filed or severed before June 2013, and all but one is still

---

[3] *Widmer v. Anglin*, Case No. 12-cv-2234 (C.D. Ill, filed Sept. 4, 2012); *Widmer v. Martin*, Case No. 12-cv-1261 (S.D. Ill., filed Dec. 12, 2012, dismissed Jan. 15, 2014) (4 cases were severed from this case:

pending (counsel has been appointed in all but one of these). In July and August 2013, Plaintiff filed four new cases[4] (two in this Court), which are still pending. He filed another case in November 2013, and yet another in December 2013.[5] Two of Plaintiff's cases filed in the Southern District of Illinois since July 1, 2013, included non-related claims that were severed into four additional cases.[6]

Plaintiff's recent litigation history shows that he has been successful in filing numerous claims, actions, and motions in spite of Defendant Bramlet's alleged interference. Clearly, the courts have found his pleadings to be sufficiently intelligible and compliant with rules to allow him to proceed with a great many potentially meritorious claims, despite Plaintiff's generalized protests that Defendant Bramlet frustrated his preparation of some documents. Plaintiff has not identified a single instance where he lost or was hindered in his ability to pursue a meritorious claim because Defendant Bramlet refused to provide copies or materials, nor does a survey of Plaintiff's pending cases reveal any such problem. This record does not support Plaintiff's bare speculation that Defendant Bramlet's refusal to provide copies or materials "could possibly" cause Plaintiff to run afoul of court orders and lose a case.

In considering whether to grant injunctive relief, a district court is obligated to weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that

---

Case Nos. 13-cv-23, 13-cv-24, 13-cv-25, and 13-cv-26); and *Widmer v. Hodge*, Case No. 13-cv-417 (S.D. Ill., filed April 30, 2013).

[4] *Widmer v. Page*, Case No. 13-cv-663 (S.D. Ill., filed July 11, 2013); *Widmer v. Hodge*, Case No. 13-cv-788 (S.D. Ill., filed August 2, 2013); *Widmer v. Engleson*, Case No. 13-cv-6095 (N.D. Ill., filed Aug. 26, 2013); and *Widmer v .Lt. Shaw*, Case No. 13-cv-6097 (N.D. Ill., filed Aug. 26, 2013).

[5] *Widmer v. Kempfer*, Case No. 13-cv-1131 (S.D. Ill., filed Nov. 4, 2013); and *Widmer v. Harrington*, Case No. 13-cv-1248 (S.D. Ill., filed Dec. 3, 2013).

[6] *Widmer v. Page*, Case No. 13-cv-663, spawned three severed cases (Case Nos. 13-cv-787, 13-cv-1245 (later dismissed on March 3, 2014), and 13-cv-1246). *Widmer v. Kempfer*, Case No. 13-cv-1131, had one claim severed into Case No. 13-cv-1154.

has long been part of the Seventh Circuit's jurisprudence. Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999). The instant complaint, even liberally construed, does not meet this test. He is not likely to succeed in showing that Defendant Bramlet has violated his right to access the courts, nor that a future violation is probable. If Plaintiff's right to access the courts were to be violated, he would have an adequate remedy at law, by raising the issue in a new civil rights complaint. He has not shown or even alleged that he would suffer any irreparable harm if injunctive relief is denied, nor that the irreparable harm to the Defendant would be outweighed by the harm to Plaintiff in the absence of injunctive relief. Likewise, the public interest would not be served by an injunction, particularly in the absence of any constitutional violation.

In essence, Plaintiff's request for injunctive relief is a plea that he be given copies (at prison expense) of any documents he deems relevant to some claim he desires to pursue in court, regardless of whether a court order or discovery request has directed him to provide these documents. Even if Plaintiff had demonstrated an actual denial of access to the courts, such a request goes far beyond the scope of appropriate injunctive relief, which must be narrowly tailored to remedy an actual constitutional violation. *See, e.g.*, *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841-42 (7th Cir. 2013) ("injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation"); *Judge v.*

*Quinn*, 624 F.3d 352, 360 (7th Cir. 2010) ("once a constitutional violation has been proven, federal courts have the power to issue remedial orders tailored to the scope of the constitutional violation"). This is particularly true in the prison context, where the Prison Litigation Reform Act (PLRA) requires that an injunction must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Plaintiff's complaint and the court records of his litigation activity fail to show that Defendant Bramlet has caused Plaintiff to suffer any detriment to his ability to bring or maintain any of his legal claims. He thus does not state a claim upon which relief may be granted for denial of his access to the courts. Furthermore, the portion of Count 1 that reiterates claims previously dismissed in Case No. 13-cv-663-MJR-SCW is frivolous. Count 1 is therefore subject to dismissal with prejudice.

**Dismissal of Count 2 – Mail Interference**

This claim concerns Plaintiff's assertion that Defendant Bramlet should be required to provide him with "legal envelopes" allowing him to send mail to various public officials (the Illinois Governor, the FBI, and federal and state elected representatives and senators). This matter is distinct from Plaintiff's access to courts claim, because none of his listed intended recipients is connected to the federal or state judiciary.

It is well established that an inmate's right to access the *courts* includes the right to receive, at state expense, materials necessary to draft legal documents as well as the stamps to mail them. *Bounds v. Smith*, 430 U.S. 817, 824 (1977); *Gaines v. Lane*, 790 F.2d 1299, 1308 (7th Cir. 1986). However, this right does not include the right to unlimited free postage, particularly for correspondence that is not related to the filing of legal documents. *Gaines*, 790

F.2d at 1308 (denying constitutional challenge to state regulation (ILL. ADMIN. CODE, tit. 20, § 525.130(a)) that allows limits on the number of outgoing privileged and non-privileged letters an inmate may send at state expense). Plaintiff's desire to correspond with the officials listed in his complaint has no discernible connection to his right to file or maintain any litigation, thus such letters do not constitute legal correspondence within the scope of *Bounds v. Smith*. State regulations define outgoing mail to these and other officials as "privileged mail," and allow an inmate to send letters to the listed officials at his own expense. ILL. ADMIN. CODE, tit. 20, §§ 525.110(g);[7] 525.130(a). An indigent inmate may send *some*, but not all, "privileged mail" at state expense; postage will be provided by the prison only for a selected list of recipients, and even then may be limited to "reasonable amounts." ILL. ADMIN. CODE, tit. 20, § 525.130(a).[8] This regulation is accurately quoted in Plaintiff's "Exhibit C," which includes "Section 525.130 Outgoing Mail" (Doc. 1, p. 11).

Plaintiff's claim boils down to an assertion that he should have the unlimited right to send "privileged mail" to non-judicial public officials at taxpayer expense, just as he has the right to send legal correspondence to the courts (which is subject to his repayment of the costs advanced on his behalf as his resources permit). However, this is not the law, and Defendant Bramlet's refusal to provide Plaintiff with pre-paid envelopes to correspond with those public

---

[7] Privileged mail, as defined in § 525.110(g), includes mail addressed to certain officials within the Illinois Department of Corrections, members of the Administrative Review Board or Prisoner Review Board, the Illinois Governor, federal or state legislators, officials of the FBI and several other listed federal and state law enforcement agencies, clerks of court, and "legal mail" as defined in § 525.110(h). Thus, all outgoing "legal mail" is also "outgoing privileged mail" – but the reverse is not true.

[8] Section 525.130(a) states: "Offenders shall be permitted to send privileged and non-privileged letters at their own expense. Offenders with insufficient money in their trust fund accounts to purchase postage shall be permitted to send reasonable amounts of legal mail and mail to clerks of any court or the Illinois Court of Claims, to certified court reporters, to the Administrative Review Board, and to the Prisoner Review Board at State expense if they attach signed money vouchers authorizing deductions of future funds to cover the cost of the postage. The offender's trust fund account shall be restricted for the cost of such postage until paid or the offender is released or discharged, whichever is soonest."

officials does not violate the Constitution. Even in the case of legal mail, a prisoner does not have the right to unlimited free postage. *Gaines*, 790 F.2d at 1308 (noting, however, that a claim could arise if prison officials interpret regulations so as to deny a prisoner's legitimate access to the courts); ILL. ADMIN. CODE, tit. 20, § 525.130(a). Prison authorities may make "a reasonable attempt to balance the right of prisoners to use the mails with prison budgetary considerations." *Bach v. Coughlin,* 508 F.2d 303, 307-08 (7th Cir. 1974). Count 2 also fails to state a claim upon which relief may be granted.

**Disposition**

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Defendant **BRAMLET** is **DISMISSED** from this action with prejudice.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Because two of Plaintiff's previously-filed lawsuits have been dismissed as frivolous,[9] the dismissal of this case gives Plaintiff his third and final "strike." Accordingly, if Plaintiff seeks to file any future civil action *while he is a prisoner*, he will no longer be eligible to pay a filing fee in installments using the *in forma pauperis* provisions of § 1915(a) and (b), unless he can establish that he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). If Plaintiff cannot make the necessary showing of imminent physical danger, he shall be required to pre-pay the full filing fee for any future lawsuit he may file while incarcerated, or face dismissal of the suit. In addition, Plaintiff is **ADVISED** that if he files a new complaint that fails to disclose this litigation history, that complaint shall be subject to summary dismissal. *See Hoskins v. Dart*, 633 F.3d 541, 543 (7th

---

[9] *Widmer v. Slover*, Case No. 99-cv-721-GPM (S.D. Ill., dismissed Dec. 7, 1999, as frivolous); *Widmer v. Lawless*, Case No. 13-cv-1245-MJR-SCW (S.D. Ill., dismissed March 3, 2014, as frivolous)

Cir. 2011); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999) (litigant who sought and obtained leave to proceed IFP without disclosing his three-strike status committed a fraud upon the court).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, because Plaintiff has "struck out" and has not shown that he is in imminent danger of serious physical injury, this Court will not grant him permission to proceed *in forma pauperis* on appeal. Finally, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 26, 2014**

s/ MICHAEL J. REAGAN
United States District Judge